260 S.W.2d 562 (1953)
MARTIN
v.
LINGLE REFRIGERATION CO. et al.
No. 43284.
Supreme Court of Missouri, Division No. 2.
July 13, 1953.
Rehearing Denied September 14, 1953.
*563 Herbert Van Fleet, Joplin, Mo., Henry I. Eager, Richard G. Poland, Kansas City, Mo., Seiler, Blanchard & Van Fleet, Joplin, Blackmar, Newkirk, Eager, Swanson & Midgley, Kansas City, of counsel, for appellant-respondent.
Paul C. Sprinkle, William F. Knowles, Roy F. Carter, Sprinkle, Knowles & Carter, Kansas City, for defendant-appellants.
J. D. James, Alvin C. Randall, Hogsett, Depping, Houts & James, Kansas City, for respondents.
WESTHUES, Commissioner.
Plaintiff Martin filed this suit against Lingle Refrigeration Company, a corporation, Ernestine Wallace, Andrew Wallace, E. L. Morgans, and David Richerson to recover damages for personal injuries alleged to have been sustained in a collision involving a Dodge car, driven by Martin, a Nash car, driven by defendant Ernestine Wallace, and a truck, driven by David Richerson. The case was dismissed as to Andrew Wallace, husband of Ernestine, who had been named as a defendant. Prior to this dismissal, Andrew Wallace had filed a claim against Morgans and Richerson to recover damages for the loss of services of his wife and for medical expenses incurred in treating the wife's injuries alleged to have been sustained in the collision. A trial resulted in a verdict in plaintiff's favor in the sum of $12,000 against E. L. Morgans, owner of the truck, and David Richerson, the driver. The jury also found for Andrew Wallace on his claim against Morgans and Richerson in the sum of $2,000. The jury returned a verdict in favor of Lingle Refrigeration Company and Ernestine Wallace and against plaintiff Martin on his claim against these two defendants.
Plaintiff Martin appealed from the judgment in favor of the Refrigeration Company and Ernestine Wallace. Morgans and Richerson appealed from the judgments in favor of Martin and Andrew Wallace.
It was admitted that at the time of the collision, Richerson was driving a truck owned by the defendant Morgans and was using the truck as Morgans' employee. It was also admitted that defendant Ernestine Wallace was driving a Nash car which she owned and that she and her husband, Andrew Wallace, were at the time of the collision engaged in their work on behalf of the defendant Lingle Refrigeration Company.
*564 The evidence as to the collision disclosed the following: On the afternoon of December 13, 1949, at about one o'clock, plaintiff was driving south in his Dodge car on Highway 65 (a north-south highway), about 8 miles south of Buffalo, Missouri. Following plaintiff's car was defendant Richerson, driving a truck for Morgans; following the truck was defendant Ernestine Wallace and her husband in a Nash car. The highway at the point in question was practically level and straight. The day was clear and the concrete roadway, the width of an ordinary two-lane road, was dry. The shoulders of the road were slightly wet. The temperature was above freezing at the time.
Plaintiff testified that he was driving about 45 or 50 miles per hour and had maintained that speed for some miles. Defendant Richerson stated he was hauling lime for defendant Morgans and was at the time of the collision returning to Springfield with an empty truck; that he was driving about 50 miles per hour; that he caught up with plaintiff's car and intended to pass when traffic on the highway permitted. Defendant Ernestine Wallace testified that she caught up with the truck and saw the Dodge ahead of the truck; that the truck and the Dodge seemed to be traveling as a unit; that it was her intention to pass both vehicles when conditions permitted. It was admitted by all parties that at the time of the collision no other vehicles were in sight either north or south. Conditions on the highway were such that it seemed safe to pass.
We shall quote rather extensively from the record to demonstrate the sharp dispute as to how the collision occurred. Richerson, the driver of the truck, gave the following version:
"A. Well, as I recall it, we was traveling south on 65 and I had caughten up with the Dodge some, say, half mile back, and this Nash car had caughten up with me. In the meantime we were all three traveling along the highway. I kept observing this Nash car in the rear-vision mirror occasionally, just, you might say, glanced back and forth, watching both ends, and it didn't make any move to go around, and I wanted to be ahead because I didn't like to be in the center of the two, so I pulled out to go around. As I got out in the left-hand lane, in the east lane, and almost up to the Dodge, why, I glanced to the side again. There is the Nash on the shoulder and coming on around pretty fast, and I immediately applied my brakes and slackened up, throttled it down, to give the Nash room to get on around, then immediately cut right. After it got around, it cut back across the highway. I pulled back in the right-hand lane so I could see things on the right and then I pulled back to the left side to miss everything, and the accident happened; the Nash hit the Dodge and they overturned.

* * * * * *
"Q. (By Mr. Eager) Now, Mr. Richerson, did you see the Nash hit the rear end of the Dodge of Mr. Martin? A. I saw it come in contact with it, yes.
"Q. You saw it hit it somewhere? A. Yes, sir.
"Q. As the Nash came back on the highway at this forty-five degree angle, was it headed toward Mr. Martin's car? A. Yes, sir.
"Q. After it came on the highway at this angle, I want you to tell us whether you ever saw the Nash change its course any? A. I did not.
"Q. Then tell us whether or not the Nash, as it came back on the highway, proceeded in a direct course toward Mr. Martin's car until it hit it? A. It did.
"Q. At that time I will ask you whether or not Mr. Martin's car was entirely on its own side of the road, on the east side of the road? A. Yes, sir.
"Mr. Sprinkle: West side.
"Q. (By Mr. Eager) West side, on its own side? A. On the right-hand side of the road." *565 Mrs. Wallace's testimony concerning the collision is summarized in the following:
"Q. All right. I wish you would just tell the jury in your own words, Mrs. Wallace, from there on how this accident happened, and speak loud enough so all can hear you. A. You mean from the time I started to pass?
"Q. From the time when you started to pass. A. As I stated, the truck and the car were driving close together, when I was about 75 feet behind, nothing coming toward me, clear, dry highway. I honked my horn to go around. The truck pulled out and immediately pulled back into its lane, and just as I came up even with him, he pulled directly right out, and there was nothing for me to do but take the shoulder.

* * * * * *
"Mr. James: Just tell us what you did. A. I honked. The truck pulled out and went back in its lane very definitely, and I came on. Just as I got even with him, he pulled right out and I went over to the shoulder. I partially lost control over the car. The shoulder was more or less damp because frost had been all over the ground, but I had control enough of the car to get it back on the highway. I got myself righted on to the highway and headed down, and an impact hit me from the back, which caused me to lose complete control. The next thing I knew, I woke up in the hospital.

* * * * * *
"Q. Mrs. Wallace, do you have any idea how far you ran on the left shoulder of the road? A. Between one hundred and two hundred feet."
Defendant Richerson testified that he did not sound a warning before turning left to pass the Dodge car. He further testified that he did not hear any warning from the Nash car before he saw it on the shoulder of the roadway trying to pass his truck. Plaintiff testified he heard no warning before the collision. Mr. and Mrs. Wallace testified their Nash came in contact with the Dodge. Both cars overturned. The truck came to a stop on the left side of the road, partly in the ditch. The driver Richerson testified his truck did not come in contact with either car. The Wallaces stated the truck struck their car, the Nash, from the rear about the time the car was back onto the concrete slab. The evidence was that the speed of the Nash car was not changed very much after the driver started to pass the truck and the Dodge.
Plaintiff Martin has briefed only one point. He claims that the court erred in giving instruction I on behalf of defendants, Lingle Refrigeration Company and Mrs. Wallace.
Defendants Morgans and Richerson complain of the trial court's ruling denying their motion to require the production of an original statement given by defendant Wallace and her husband concerning the collision or to use a copy thereof for the purpose of impeachment. They also complain of the court's instructions 2, H, and Y. These defendants say further that the court erred in receiving the verdicts because they were not complete and did not dispose of all the issues; and that the verdict of $12,000 is excessive.
We shall first dispose of plaintiff's complaint as to instruction I. This instruction reads as follows:
"You are instructed that if you find and believe from the evidence that while Ernestine Wallace was in the act of passing the truck, if so, defendant Richerson turned the truck to the left and forced the Wallace automobile onto the shoulder, and that the defendant Ernestine Wallace, in the exercise of the highest degree of care, drove her car on to the shoulder in order to avoid a collision with the truck, and that she was not negligent, as submitted in other instructions, your verdict will be against the plaintiff as to defendants Ernestine Wallace and Lingle Refrigeration Company."
Instruction 1 submitted plaintiff's case to the jury as against defendants Wallace and the Refrigeration Company on a number of charges of negligence not mentioned in instruction I. For example: that she failed *566 after getting her car onto the shoulder of the road to stop or to slacken the speed of her car so that she could come back safely onto the highway; or that she failed to continue on the shoulder and drove her car back onto the highway into the path of the truck and so close thereto that the truck struck the rear end of her car causing it to strike plaintiff's car. These charges of negligence were submitted in the disjunctive.
Instruction I was certainly misleading and would tend to confuse a jury. A jury could well conclude that a verdict for the defendants Refrigeration Company and Mrs. Wallace was authorized if the jury found the driver of the Nash was forced to drive her car onto the shoulder to avoid a collision with the truck and that she was not negligent in this respect. If a defendant desires to hypothesize facts in a converse instruction, the instruction must require a finding on all charges of negligence submitted in plaintiff's instruction. In Jones v. Terminal R. R. Ass'n of St. Louis, Mo.Sup., 242 S.W.2d 473, loc. cit. 478(11-13), we held that if a defendant desires to hypothesize facts in a verdict-directing instruction, he must require a finding that there was no negligence on part of the defendant on any theory. The Jones case was a res ipsa loquitur case, but the principle is the same. In a case in which more than one specific charge of negligence is submitted in the disjunctive, a converse verdict-directing instruction must require a finding on all charges of negligence submitted. Colvin v. Mills, 360 Mo. 1181, 232 S.W.2d 961, loc. cit. 965, 966 (3)(4).
Defendants Wallace and the Refrigeration Company say that the clause in the instruction "and that she was not negligent, as submitted in other instructions" required the jury to find Mrs. Wallace free from any negligence. It is the defendants' position that plaintiff by his instruction "clearly submits as one ground of negligence the act of Ernestine Wallace in causing or permitting her automobile to go out on the left shoulder of the highway while in the act of passing the truck."; that this was "an essential element of plaintiff's case." We do not so read the instruction. The Wallace car may have been forced onto the shoulder without any negligence on part of the driver. But the evidence justified a finding that the driver of the Nash did not reduce the speed of her car after getting on the shoulder but recklessly attempted to pass the truck and the Dodge. Mrs. Wallace testified she may have driven on the shoulder for a distance of 150 to 200 feet, then when she turned her car onto the pavement, her car was struck by the truck. However, there was evidence that the truck did not touch the Nash car and that the Nash car was driven crosswise of the road into the Dodge car. A jury could well find that Mrs. Wallace was negligent in not reducing the speed of her car and stopping rather than attempting to pass two vehicles while driving on a wet shoulder of the road. As we read plaintiff's instruction, it submits in the disjunctive two distinct charges of negligence not referred to in instruction I.
We rule that because of instruction I the judgment in favor of the Refrigeration Company and Ernestine Wallace and against plaintiff must be reversed and the cause remanded for retrial as between plaintiff and these defendants.
Appellants Morgans and Richerson during the trial asked the court to make an order upon Mr. James, one of the attorneys for Mr. and Mrs. Wallace, to produce a statement signed by the Wallaces as to how the collision occurred. Appellants desired to use the statement for impeachment purposes. A subpoena had been served upon Mr. James to produce the statement. Mr. James objected on the ground that the statement was taken by the attorneys for the Wallaces and that it was privileged. The trial court sustained the objection. This question was ruled adversely to appellants' contention in a recent case, State ex rel. Terminal R. Ass'n of St. Louis v. Flynn, Mo.Sup., 257 S.W.2d 69, loc. cit. 73 (7, 8) (9) (10). The trial court's ruling was correct.
Morgans and Richerson say the court erred in giving plaintiff Martin's instruction 2. The point is made that there *567 was a failure of proof to support the charge of negligence that the driver of the truck crowded the Wallace car onto the shoulder of the road. The evidence of Mr. and Mrs. Wallace supports the charge of negligence. If their evidence be true, the truck was turned into the left lane of the roadway after the Nash car was in the act of passing the truck; and to avoid a collision, the Nash was driven onto the shoulder. The point must be ruled against Morgans and Richerson.
The next complaint made against the instruction (No. 2) is that it did "not require a finding that the negligence of defendant Richerson was the continuing proximate cause of the accident." (Emphasis ours.) We can best answer this contention by setting forth the portion of the instruction dealing with this question:
" * * * and if you further find and believe that defendant Richerson turned his said truck to the left and crowded Ernestine Wallace's automobile on to the east shoulder of the highway while she was in the act of passing his said truck and when he saw or should have seen her automobile in such act; or if you find that defendant Richerson so operated his said truck that by failing to stop, slacken its speed or turn it, he caused it to collide with the automobile of Ernestine Wallace after that automobile came back on the pavement from the east shoulder and thereby caused Ernestine Wallace's car to collide with plaintiff's car; and if you find and believe that the defendant Richerson so operated his said truck and that in doing so he was negligent, as the term is defined in these instructions, and that his negligence, if you find that he was negligent, solely, or concurrently with the negligence of the defendant Ernestine Wallace, if you find that she was negligent under the other instructions, directly and proximately caused plaintiff's automobile to be overturned and that as a direct result thereof, plaintiff suffered any damage or injury, then your verdict will be in favor of the plaintiff and against the defendants David Richerson and E. L. Morgans."
It is the contention of Richerson and Morgans that the clause of the instruction "and if you find and believe that the defendant Richerson so operated his said truck and that in doing so he was negligent, as the term is defined in these instructions, and that his negligence, if you find that he was negligent, solely, or concurrently with" the negligence of Wallace, "directly and proximately caused" plaintiff's injuries, had no reference to the first part of the instruction but referred only to the second portion of the instruction. To this we cannot agree. As we read the instruction, the clauses above set forth submitted to the jury the question of whether Richerson's operation of the truck constituted negligence and also whether such negligence caused plaintiff's injuries. It clearly referred to the operation of the truck from the time Richerson is alleged to have turned left to pass the Dodge until the time he is alleged to have driven the truck against the rear of the Nash car. The case of Carlisle v. Tilghmon, Mo.Sup., 159 S.W.2d 663, was cited. In that case, a defect which had no possible connection with the occurrence was submitted to a jury as a basis for liability. That case is no help to us here. We disagree with the contention made by Richerson and Morgans that the forcing of the Nash car onto the shoulder of the road could not have been a proximate cause of plaintiff's injuries.
Richerson and Morgans complain of instruction H whereby the claim of Andrew Wallace was submitted to the jury. This was an instruction based on humanitarian negligence. The instruction hypothesized the facts in issue and submitted the case to the jury on the theory that if at the time the Wallace car occupied the left lane of the highway, Richerson turned his truck to the left and that the Wallace car was in imminent peril, "and that Richerson saw or in the exercise of the highest degree of care could have seen Mrs. Wallace and her car in said position of imminent peril in time thereafter, by the exercise of the highest degree of care and by the use of the appliances on said truck and with safety *568 to himself and said truck, to have stopped turning to his left and to have swerved his said truck to his right, and thereby avoided forcing the Wallace car off of the highway, * * *." They have assigned six reasons for which the instruction was erroneous. Since we have concluded that the instruction is fatally defective, we need not discuss the other assignments. The instruction omits any reference to the danger to the plaintiff Martin who was the innocent victim of this unfortunate occurrence. The instruction should have required the jury to find that the truck could have been swerved to the right with safety to the truck driver, the truck, and Mr. Martin. As we view the evidence, if the truck had been swerved to the right, there was grave danger of the truck's colliding with the Martin car. The omission of this element from the instruction is fatal and requires the judgment in favor of Andrew Wallace to be set aside. Spoeneman v. Uhri, 332 Mo. 821, 60 S.W. 2d 9, loc. cit. 13(11); Borgstede v. Waldbauer, 337 Mo. 1205, 88 S.W.2d 373, loc. cit. 376, 377(7-10).
Complaint is made that the verdicts of the jury did not dispose of all the parties or all the issues and, therefore, the court erred in receiving the verdicts. In the verdict in favor of plaintiff Martin, the jury found the issues in favor of plaintiff and against defendants Richerson and Morgans and assessed the damages at $12,000. The jury further found the issues in favor of the defendant Ernestine Wallace. It is contended that no finding was made as to defendant Lingle Refrigeration Company. The court entered a judgment in favor of this company. Since the liability of the Refrigeration Company depended on the negligence of Ernestine Wallace, a finding by a jury in her favor was tantamount to a finding in favor of her principal, the Refrigeration Company. The trial court was correct in entering the judgment.
After the jury retired to consider the case on the merits, they were returned to the court room; after some discussion, one of the jurors informed the court that the jury had agreed on one phase of the verdict but could not agree on one particular point. The court then gave the following instruction (Y):
"As heretofore instructed, there are two causes of action presented under the instructions in this case, one pertaining to plaintiff's petition and the defenses of the several defendants thereto, and a cross-claim by Andrew Wallace against E. L. Morgans and David Richerson. You are, therefore, instructed that if you have reached a verdict as to either of the foregoing causes of action you may return such verdict."
Thereafter, the jury returned to the jury room for further deliberation. Later, the jury returned verdicts as indicated in the first part of this opinion. The giving of instruction Y was made the subject matter of an assignment of error. We fail to see wherein this instruction was prejudicial to the rights of any party to the suit, either plaintiff or defendants, or to Andrew Wallace who filed a cross-claim. Certainly, the jury could have returned a verdict disposing of the issues on plaintiff's cause of action and have failed to agree on the claim of Wallace or vice versa. It is said that such an instruction confuses a jury. It evidently did not in this case.
Morgans and Richerson say the verdict against them in the sum of $12,000 in favor of Martin "is excessive and so excessive as to indicate passion and prejudice on the part of the jury." To this we cannot agree. Martin's car was completely demolished; medical and hospital expenses amounted to about $900; loss of earnings was over $1,000. His actual financial losses were over $3,000. Plaintiff submitted to two operations for a traumatic hernia. He suffered a number of vertebral fractures and a fractured rib. Plaintiff was an insurance adjuster, 32 years of age. His occupation required him to climb ladders and to get on damaged buildings to make his inspections. Due to the injuries sustained, plaintiff will be permanently restricted in his activities to some extent. Considering all of this, and the pain and suffering which plaintiff was forced to undergo, we cannot say $12,000 is excessive. Baker v. Kansas City Terminal Ry. Co., Mo.Sup., 250 S.W.2d 999, loc. cit. 1007.
*569 The judgment in favor of Martin against E. L. Morgans and David Richerson in the sum of $12,000 is hereby affirmed. The judgment in favor of Lingle Refrigeration Company and Ernestine Wallace as to Martin's claims is reversed and the cause remanded. The judgment of $12,000 is to be held in abeyance pending a retrial on the issue of liability of defendants Lingle Refrigeration Company and Ernestine Wallace to plaintiff Martin. The judgment of $2,000 in favor of Andrew Wallace against Morgans and Richerson is reversed and the cause remanded.
It is so ordered.
BOHLING and BARRETT, CC., concur.
PER CURIAM.
The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court.
All concur.